**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MILLCRAFT PAPER CO.,** | ) | **CASE NO. 1:15CV2175** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **VERITIV CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #9) of Defendant,

Veritiv Corporation, to Dismiss.  For the following reasons, the Motion is denied.

**I. BACKGROUND**

Plaintiff's Complaint alleges the following factual situation.  Both Plaintiff and

Defendant are, among other business activities, wholesale distributors of printing paper

products for automotive advertising projects.  Automotive companies, or advertising

companies they work with, contract with printing companies for the production of advertising

materials on premium coated paper products.  The printing companies issue requests for

production (RFQ) to paper distributors for the supply of specified paper for particular

contracts.  Paper distributors, such as Plaintiff and Defendant, submit proposals to supply the paper identified in an RFQ.  Thus, in the paper food chain at the heart of this case there are three levels: the paper manufacturers, paper distributors (Plaintiff and Defendant) and end users (automotive companies or their advertising companies).

Plaintiff alleges that on several occasions it has paid higher prices than Veritiv Corporation for contemporaneous purchases of paper of like grade and quality for automotive advertising projects.  Plaintiff has requested that paper manufacturers extend the same low prices to Millcraft as they do for Veritiv.  These requests have been refused due to alleged pressures from Veritiv that have prevented Millcraft from receiving the same pricing.  Millcraft has alleged that the price discrimination has been substantial, has gone on for a significant period of time and has injured competition.  Plaintiff's claims include a Robinson-Patman Act violation under 15 U.S.C. § 13(f) that Veritiv Corporation knowingly induced and/or received a discrimination in price in the purchase of commodities of like grade and quality.  Millcraft further alleges that there is no cost or other justification for paper manufacturers to extend more favorable pricing to Veritiv other than Veritiv's use of its market power to insist upon more favorable pricing for itself while pressuring paper manufacturers to keep from extending the favorable pricing to Millcraft.  Plaintiff seeks attorneys fees, treble damages and injunctive relief.

Defendant bases its Motion to Dismiss on Plaintiff's alleged failure to state the essential elements of a Robinson-Patman Act Section 2(f) claim.  Defendant claims the Complaint does not adequately allege a relevant market, threatened harm to competition or antitrust standing and does not allege that Veritiv knew that the prices were not subject to a

Section 2(a) defense under the Robinson-Patman Act ("RPA").

## II. LAW AND ANALYSIS

### A. Standard of Review

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a claim has been adequately stated in the complaint. *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994)(*citing Nishiyama v. Dickson County, Tenn.* 814 F.2d 277, 279 (6th Cir. 1987)). The basic pleading requirements are set out in Rule 8(a) and call for "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*; Fed.R.Civ.P. 8(a). Rule 8(a) does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) a court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). A complaint only requires "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997)(*citing In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). While construing the complaint in favor of the non-moving party, a court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A complaint will only be dismissed pursuant to Rule 12(b)(6) when there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if there is an

insurmountable bar to relief on the face of the complaint.  *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  However, "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."  *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976).

**B. Discussion**

Pleading Requirements

"The RPA was enacted in response to the comparative competitive advantage of large purchasers, who could induce advertising allowances, rebates, and special services from sellers due to their size.  Small independent stores were at a 'hopeless competitive disadvantage' compared to large stores and thus the RPA was enacted 'to eliminate these inequities.'" *Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 799 (6th Cir. 2012) *citing FTC v. Simplicity Pattern Co.*, 360 U.S. 55 (1959).  Millcraft complains of a secondary-line injury under the RPA.  Secondary-line price discrimination occurs when a seller's discrimination impacts competition among the seller's customers; such as favored purchasers and disfavored purchasers.  *See F.T.C. v. Sun Oil Co.*, 371 U.S. 505 (1963).

A secondary line claim under the RPA requires Millcraft to show that: (1) the relevant sales "were made in interstate commerce"; (2) the paper products were of "like grade and quality"; (3) manufacturers discriminated in price between Millcraft and another customer; and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored customer (i.e. Veritiv) other than Millcraft.  *Volvo Trucks N. Am. Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).  Millcraft has met these pleading

-4-

requirements required under a secondary-line RPA claim.

### 1. Relevant sales and market

Millcraft sufficiently alleges in the Complaint that the relevant sales were made in interstate commerce.  The Complaint indicates that various "U.S. based paper coated manufacturers" are utilized in supplying paper for automotive advertising projects.  Compl. ¶ 14.  The Complaint also specifically alleges that the purchases "have been made in interstate commerce" and that the purchased paper products have been sold for use in the United States. *Id.* ¶ 23.  Additionally, the principal places of business of the Plaintiff (Cleveland, Ohio) and Defendant (Atlanta, Georgia) require that purchases were made in interstate commerce.  The Court finds that the requirement that relevant sales were made in interstate commerce has been sufficiently plead.

The Defendant's argument that Millcraft has failed to allege a relevant market is inconsistent with the pleading requirements for a claim under the RPA.  The applicable pleading standard cited above does not require that a relevant market be plead in the Complaint.  The cases cited by the Defendant do not indicate that relevant market is a specific pleading requirement and most of the cited cases apply to either the Sherman Act, a different antitrust statute, or to primary-line RPA claims; thus they are distinguishable.

Two unreported cases are central to the Defendant's argument and heavily relied upon.  The first, *Sheet Metal Duct, Inc. v. Lindab, Inc.*, indicates that relevant market is a necessary claim under the RPA, however the case is an outlier and not only is unpersuasive, it is non-binding.  No. 99-6299, 2000 U.S. Dist. LEXIS 9928 (E.D. Pa. July 18, 2000).  Furthermore, the two appellate cases the decision uses to support this proposition are silent as

to the RPA and any relevant market requirements.  The second unreported case cited by

Defendant, *Beuff Enter. Florida, Inc. v. Gilbert*, relies on the *Sheet Metal* case and is similarly

an unpersuasive and non-binding authority.  No. 07-2159, 2008 U.S. Dist. LEXIS 50591

(D.N.J., June 25, 2008).

Assuming, arguendo, that relevant market is required to be identified in the

Complaint, then Millcraft has satisfied this requirement.  The facts alleged in the Complaint

infer that the relevant market is the geographic market of the United States and the relevant

product market is the market for premium coated paper for automotive advertising industry

projects.  *See* Compl. ¶ 13; *See also* Compl. ¶ 23.

The Court finds that the relevant sales in interstate commerce requirement has been

sufficiently plead and, if necessary, that a relevant market has also be sufficiently plead.

### 2. Like Grade and Quality

It is undisputed that the paper products were of like grade and quality.  The Complaint

alleges in several paragraphs that the paper products are "of like grade and quality."  *See*

Compl. ¶ 17.  The Court finds that the like grade and quality requirement has been

sufficiently plead.

### 3. Price Discrimination

Also undisputed is the alleged price discrimination by paper manufacturers against

Millcraft in favor of Veritiv.  Price discrimination, under the RPA, is merely a price

difference. *F.T.C. v. Anheuser-Busch*, 363 U.S. 536, 549 (1960).  The Complaint alleges in

several places that Millcraft has paid a higher price and discriminatory low prices have been

afforded to Veritiv.  Thus, price differences and therefore, price discrimination, is present.

-6-

The Court finds that the price discrimination requirement has been sufficiently plead.

### 4. Harm to Competition/Competitive Injury

Threatened harm to competition or competitive injury is essential because the RPA does not ban all price discrimination; rather it only prohibits price discrimination that threatens to harm competition. *Erickson's Flooring & Supply Co., Inc. v. Basic Coating, Inc.*, No. 04-74990, 2007 WL 3036747 (E.D. Mich. Oct. 15, 2007) *citing Volvo*, 546 U.S. at 870. The RPA "requires only that there be a reasonable possibility of substantial injury to competition before its protections are triggered." *Nirvana, Inc. v. Nestle Waters North America, Inc.*,123 F.Supp.3d 357 (N.D. New York 2015) *citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993). "[A] permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." *Volvo*, 546 U.S. at 870 *citing FTC v. Morton Salt Co.*, 334 U.S. 37 (1948); *Falls City Industries, Inc. v. Vanco Beverage*, 460 U.S. 428 (1983).

The Complaint specifically alleges threatened harm to competition and competitive injury by alleging that the "effect of the discriminatory pricing caused and demanded by Veritiv is to substantially lessen competition or tend to create a monopoly, or to injure, destroy, or prevent competition." Compl. ¶ 25. This claim is supported by facts that Millcraft has, for several years, paid prices higher than have been charged to Veritiv.

Although specific pricing has not been alleged in the Complaint, several facts support that there has been a significant price reduction for Veritiv. Millcraft alleges that it has made purchases at prices higher than have been charged to Veritiv. Compl. ¶ 13. A representative

of a paper manufacturer told Millcraft that an agreement with Veritiv prevents it from providing the "special low pricing" currently provided to Veritiv.  *Id.* at ¶ 15.  Veritiv has gone further than merely receiving discriminatory low prices by demanding discriminatory pricing from paper manufacturers.  *Id.* at ¶ 18.  Finally, the discriminatory high prices that Millcraft has been required to pay have caused Millcraft to lose several projects to Veritiv, resulting in millions of dollars of lost revenue.  *Id.* at ¶ 19.  All of these factual allegations, assumed as true, support that there has been a significant price reduction for a favored competitor.

The facts also support that the significant price reduction for Veritiv was over a substantial period of time.  The Complaint does not allege a specific time frame but does indicate that the price discrimination "has continued for a significant period of time."  *Id.* at ¶ 20.  This claim is supported by the fact that Millcraft has competed to win contracts for automotive advertising contracts for several years and that purchases of premium coated paper have also been made by Millcraft for several years at prices higher than have been charged to Veritiv.  *Id.* at ¶ 11-13.

The Court finds that threatened harm to competition has been sufficiently plead by alleging facts showing a significant price reduction to favored competitor Veritiv (lower prices and loss of millions in revenue to Millcraft) over a substantial period of time (several years).

<u>ANTITRUST STANDING</u>

The Defendant also argues that the Plaintiff fails to state a claim because the Complaint does not adequately allege antitrust standing.  Defendant argues that the Plaintiff only has standing to recover damages under antitrust laws if it has sustained antitrust injury, namely, harm to competition or competitive injury.  Def.'s Mot. Dismiss 10-11.  This argument is reliant and based solely on Defendant's companion argument that Millcraft has failed to sufficiently allege harm to competition or competitive injury.  Because the Court finds that the Plaintiff has sufficiently plead harm to competition or competitive injury, no further analysis is needed and the Court also finds that the Plaintiff has antitrust standing.

<u>SECTION 2(A) DEFENSE</u>

The Defendant's final argument is that the Complaint must allege that Veritiv knew that the discriminatory pricing was not subject to a Section 2(a) defense under the RPA.  The cases cited by Defendant in this argument do not impose a pleading requirement; rather they apply to rebuttal of a prima facie case of price discrimination and other affirmative defenses of a seller which would proscribe buyer liability.  Although an argument that a defense absolving a seller also absolves a buyer may have merit, there is no pleading requirement that the buyer must have knowledge that discriminatory prices were not subject to a defense.  The law is clear that for a defendant such as Veritiv to be held liable under Section 2(f) of the RPA, it must first be shown that the Defendant is liable under Section 2(a).  *See Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 77 (1979).  As discussed above, the Court's analysis found that the Plaintiff has adequately alleged the applicable pleading requirements under a Section 2(a) claim.

With a Section 2(a) claim adequately plead, the Plaintiff must also show that Veritiv "knowingly [induced] or [received] . . . a discrimination in price which is prohibited."  15 U.S.C. § 13(f).  "The knowledge requirement may be satisfied by showing that the buyer had 'either actual knowledge, i.e., he or she must have known that the price in question was illegal, or constructive knowledge, i.e., he or she must have been reasonably cognizant of its illegality.'"  *Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.*, 312 F.Supp.2d 379, 400 (E.D.N.Y. 2004) *citing Hygrade Milk & Cream Co. v. Tropicana Prods., Inc.*, No. 88-CV-2861, 1994 WL 38549 (S.D.N.Y. Feb. 4, 1994)(further citation omitted).

Plaintiff alleges in the Complaint that Veritiv "knowingly induced and/or received a discrimination in price."  Compl. ¶ 22.  Although this statement is conclusory, it is supported by facts that must be accepted as true when considering the motion.  Plaintiff alleges that Veritiv demanded discriminatory prices from paper manufacturers.  *Id.* at ¶ 18.  Veritiv threatened to pull its business from a manufacturer if the manufacturer extended the favorable pricing to Millcraft.  *Id.* at ¶ 15.  An agreement Veritiv has with a different manufacturer prevents the manufacturer from offering Millcraft the same special low pricing.  *Id.*  Other than Veritiv's use of its market power to insist or demand upon special low pricing, there is no cost or other reason for Veritiv to receive the discriminatory low pricing.  *Id.* at ¶ 16.  These facts support that Veritiv had actual knowledge at best, or at a minimum, it had constructive knowledge of the illegal price discrimination.

The Court finds that the Complaint sufficiently alleges a violation under Section 2(f) of the RPA and that allegations that a buyer knew prices were not subject to a Section 2(a) defense are unnecessary for a sufficient complaint of price discrimination under the RPA.

-10-

### III. CONCLUSION

Based on the foregoing analysis, the Motion of Defendant, Veritiv Corporation, to

Dismiss is denied.

**IT IS SO ORDERED.**

**DATE: July 14, 2016**

**s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**